UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CRYSTAL BEAR, by and through her Guardian Ad Litem, Gary N. Bloom,<br><br>Plaintiff,<br><br>v.<br><br>FORD MOTOR COMPANY, a Delaware corporation; and MARLA BEAR, a single person,<br><br>Defendants. | NO. CV-05-0253-EFS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT FORD'S MOTION *IN LIMINE*** |

A hearing was held in the above captioned matter on February 28, 2007. Before the Court were Defendant Ford Motor Company's ("Ford") Second Motion for Partial Summary Judgment (Ct. Rec. 94), and Defendant Ford's Motion to Exclude Expert Testimony and Related Evidence Pursuant to FRE 403, FRE 702, FRE 703 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (Ct. Rec. 116). James Coon and Raymond Thomas appeared in person and Richard Eymann appeared telephonically on behalf of Plaintiff Crystal Bear. Kathleen Clark and Caryn Geraghty Jorgensen appeared on

behalf of Defendant Ford. Patrick McMahon appeared on behalf of Defendant Marla Bear Motteshard. This Order memorializes and supplements the Court's oral rulings.

At the close of the hearing, Counsel for Ford advised the Court that Ford would like to withdraw Ford's Second Motion for Partial Summary Judgment without prejudice. As neither Plaintiff nor Defendant Marla Bear Motteshard objected to Ford's request, the Court granted Ford's request to withdraw its motion without prejudice.

Pursuant to its Motion to Exclude Expert Testimony and Related Evidence Pursuant to FRE 403, FRE 702, FRE 703 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, Ford requested the exclusion of portions of the testimony of five of Plaintiff's experts. Each of the requests is addressed below.

**I. Applicable Law**

Federal Rule of Evidence 702 holds:

> a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In applying this rule, the district court has a "gate keeping responsibility" to ensure that expert testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *General Electric Co. v. Joiner*, 522 U.S. 136 (1997); *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137 (1999). The objective of the reliability requirement is to ensure "that an expert, whether basing testimony on professional studies or personal experience, employs in the

courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho,* 526 U.S. at 152. With this standard in mind, the Court reviews Ford's requests.

**II. Testimony of Dr. Karnes**

A. Arguments

Ford seeks to exclude the testimony of Dr. Edward Karnes regarding Plaintiff's claim that an alternate warning should have been posted in the vehicle at issue. Ford's initial argument is that expert testimony on warnings would not be helpful to a jury because the issue is within the ordinary understanding of jurors. Plaintiff counters that warnings are developed by experts and Dr. Karnes has worked to develop warnings for a number of devices. The testimony of experts regarding the adequacy and placement of warnings has been used without challenge in prior Ninth Circuit cases. *See Goehring v. Target*, 91 Fed. Appx. 1, 4 (9th Cir. 2004) (finding "[i]n light of the expert testimony about the inadequacy of the warnings, the district court erred in finding that as a matter of law Sam Goehring's negligence was the proximate cause of the injuries . . ."); *Andrews v. United Airlines, Inc.*, 24 F.3d 39 (9th Cir. 1994) (reversing a trial court ruling based on expert testimony regarding the adequacy of a warning). Plaintiff therefore argues that the wording, adequacy, and placement of warnings is an appropriate topic for expert testimony.

Ford's second argument is that no testing was conducted in order to evaluate the effectiveness of Dr. Karnes proposed warnings. Ford suggests that Dr. Karnes should have tested his hypothesis that an alternate warning would have been more effective. Plaintiff counters

that the warnings need not be focus group tested. Plaintiff argues that Dr. Karnes has proposed a specific alternate warning and that the criteria Dr. Karnes used to create the warning are criteria that have been published in peer reviewed journals. Further, Plaintiff argues, Dr. Karnes has been qualified as an expert on human factors analysis more than 100 times.

Ford's third and fourth argument relate to whether Dr. Karnes' may testify that Plaintiff and her family acted reasonably and whether Dr. Karnes' proposed alternate warnings would have prevented Steven Bear from purchasing the vehicle. Ford argues that Dr. Karnes would simply be vouching for Plaintiff and Mr. Bear's testimony. Plaintiff counters that she does not intend to have Dr. Karnes testify as to Plaintiff's reasonableness or what Steven Bear would have done, and that Dr. Karnes offered no such testimony in his original report, but only after questioning by Ford at his deposition.

Ford's final argument is that Dr. Karnes' proposed warning should be rejected as the kind of "informed consent" warning that is used in the medical field and it is not appropriate in the consumer product context. Plaintiff argues that any similarity between Dr. Karnes proposed warning and warnings based on informed consent has no bearing on whether the proposed warning would be effective in ensuring the safe operation of the vehicle, which is the goal fo the warning.

B. Ruling

The Court hereby grants Ford's request to exclude the testimony of Dr. Karnes regarding his proposed alternate warning, finding that Dr. Karnes has not provided an adequate basis establishing the reliability of his testimony concerning the adequacy of his proposed alternate

warning, though he is permitted to testify to the inadequacy of the warnings that Ford provided. *See Kumho,* 526 U.S. at 153 (upholding a district court's determination that, despite the acknowledged qualifications of the expert, the specific testimony offered by the expert lacked reliability).

**III. Testimony of Mr. Biss**

A. Arguments

Ford seeks to exclude the testimony of David Biss regarding the following topics: (a) a survey conducted of Ford Bronco II vehicles, (b) the design of the restraint system in the Chevrolet Blazer as a proposed alternate design, (c) customer complaints regarding 1984 Ford Bronco II seatbelt defects, (d) the useful safe life of a 1984 Ford Bronco II, (e) an alleged duty to recall the Ford Bronco II, and (f) thickening the material used to construct the seatbelt as a proposed alternate design. Ford objects to the format of the survey conducted by Mr. Biss of 37 Ford Bronco IIs, arguing that the criteria Mr. Biss used to determine which vehicles to include in the survey are unclear and therefore not scientifically reliable. Plaintiff argues that the defects found in the surveyed vehicles were similar to the defects in the functioning of the Bear's vehicle, but does not defend the scientific accuracy of the survey.

Ford objects to the proposed alternate design testimony given by Mr. Biss. In response to questions by Ford, Mr. Biss suggested that either the seatbelt design in the Chevrolet Blazer or later models of the Ford Bronco would have been superior to the design in the 1984 Ford Bronco II. Ford objects on the basis that no studies have been conducted to compare the effectiveness of other seatbelt designs in

comparison to the 1984 Ford Bronco II.

Ford further objects to the testimony of Mr. Biss regarding the experience of other Bronco II owners as detailed in complaints compiled as Master Owners Relations System II ("MORS II"). However, at the hearing, Ford withdrew this objection and intends to address this issue in a motion *in limine*.

Ford seeks the exclusion of testimony from Mr. Biss regarding the useful safe life of the vehicle, noting that Mr. Biss' testimony on this topic has been excluded in previous cases and that similar testimony regarding the useful safe life of a model of helicopter was excluded in *Frosty v. Textron*, 891 F.Supp. 551 (D. Or. 1995). Plaintiff counters that Mr. Biss' testimony is based on a study by the National Highway Traffic Safety Administration ("NHTSA"), that concluded that more than 50 percent of light trucks remain on the road 15 years after delivery. Further Plaintiff argues that the prior exclusion of testimony by Mr. Biss was limited to specific statements made at a regulatory hearing.

Ford also objects to Mr. Biss' testimony regarding a duty to recall. Ford contends that Plaintiff's claims are currently limited to the Washington Products Liability Act ("WPLA") and that the act does not contemplate the recall of items, rather the act only contemplates warnings. Ford cites to *Esparza v. Skyreach Equip*., Inc., 103 Wash. App. 916, 935 (2000), arguing that manufacturers only have a duty to issue post manufacture warnings. Plaintiff argues that a recall is a form of a warning in which the manufacturer suggests a specific repair. Plaintiff argues that *Esparza* does not hold that manufacturers do not have a duty to recall under the WPLA.

B. Ruling

Defendant's request to exclude certain portions of the testimony of Mr. Biss is hereby granted in part and denied in part. Ford's request to withdraw its objection to the complaints detailed in MORS II is granted. Mr. Biss will not be permitted to testify regarding his survey of 37 Ford Bronco IIs as the testimony does not provide sufficient foundation regarding the basis for his selection of vehicles or the background of the vehicles selected. Mr. Biss will not be permitted to testify that Ford should have recalled the vehicle as the issue of recall is not addressed in the Washington Products Liability Act, however, he will be permitted to suggest that a post-manufacture warning should have been issued. Mr. Biss will be permitted to testify that a more robust design would have been superior to the design installed on the Ford Bronco II. Mr. Biss will be permitted to testify regarding the useful safe life of the Ford Bronco II as the NHTSA study relates to "the time during which the product would normally be likely to perform," the statutory requirement for useful safe life. RCW 7.72.060.

**IV. Testimony of Ms. Ward PhD**

A. Argument

Ford seeks to exclude the testimony of Dr. Ward with respect to her testing of the rear seatbelt in the Bear's vehicle, both her attempt to put the seatbelt on herself and her use of a surrogate to test the seatbelt. Further, Ford objects to Dr. Ward's testimony that Crystal Bear could not have retrieved and used the rear seat belt on the 1984 Ford Bronco II.

Ford notes that as part of the surrogate tests conducted by Dr. Ward, she did not videotape or time the tests she conducted. Further, any attempt by Dr. Ward should be excluded as Dr. Ward is larger than

Crystal Bear. From this, Ford concludes that Dr. Ward's testing methodologies are not reliable. Plaintiff argues that Dr. Ward's test demonstrated the nature of the defect, that is, the difficulty for any individual to contort their body in order to lift the seat and reach the latch plate. With regard to the surrogate test, Plaintiff notes that the process was thoroughly photographed and documented and is not expert testimony subject to the requirements of *Daubert*.

Ford also argues that the evidence presented by Dr. Ward is misleading and contrary to the evidence as the Bears testified that they had accessed the rear seatbelts many times and usually did wear them. Plaintiff counters that Dr. Ward's testimony was not that it was always impossible for Plaintiff to retrieve her seatbelt, rather, she was not able to do so on the day in question.

B. Ruling

The Court hereby grants Defendant Ford's motion in part. Dr. Ward will not be permitted to testify with regard to her own attempt to put the seatbelt on nor will she be permitted to testify that Plaintiff was unable to use the seatbelt on the day of the accident. Dr. Ward's ability to put wear the seatbelt is not relevant under Rule 401. Dr. Ward's testimony regarding Crystal Bear's ability to use the seatbelt on the day of the accident is not reliable under Rule 702. The motion is denied in part. Dr. Ward will be permitted to testify regarding the surrogate test she conducted and as to the general difficulty in using the seatbelt as such testimony is relevant and reliable.

**V. Testimony of Mr. Caldwell**

A. Argument

Ford seeks to exclude the testimony of Mr. Caldwell when he argues

that the passenger side tires of the vehicle lifted off the ground as Marla Bear Motteshard steered the vehicle to the right after it crossed the center line. Ford cites an absence of physical evidence, and Mr. Caldwell's reliance on the testimony of the children in the vehicle at the time of the accident. Plaintiff counters by describing the process used by Mr. Caldwell to diagram the accident. Plaintiff notes that Mr. Caldwell has come to a different conclusion regarding whether the left side tires would have left a mark on the road if the right side tires lifted off the surface than Ford's expert came to, however, Plaintiff argues that it is the responsibility of the finder of fact to determine which expert is more reliable.

B. Ruling

The Court hereby denies Ford's request to exclude the testimony of Mr. Caldwell. Ford may contest the accuracy of Mr. Caldwell's conclusions by submission of its own expert testimony, however, Plaintiff has demonstrated that Mr. Caldwell's testimony meets the reliability requirements of Rule 702.

**VI. Testimony of Dr. Richardson**

A. Argument

Ford seeks to exclude the testimony of Dr. Melvin Richardson in which he states that the Ford Bronco II has a handling defect relating to oversteer, that the defect caused the loss of control that led to the accident, and the passenger side wheels lifted during the course of the steering maneuvers.

Ford contends that there is no vehicle whose rear end will not slide out if the driver steers too rapidly. Ford goes on to argue that there are numerous tests and parameters that Dr. Richardson could have

used to analyze the handling characteristics of the Ford Bronco II in comparison to other vehicles, but that Dr. Richardson did not use any parameters that would allow him to assert specific pass/fail criteria, or analyze the vehicle in relation to other allegedly more stable vehicles. Based on these complaints, and Ford's contention that Dr. Richardson has not relied on testing considered standard in the automotive industry, Ford argues that Dr. Richardson's testimony does not meet the requirements of expert testimony under *Daubert*.

Plaintiff counters that Ford attempts to challenge Dr. Richard's conclusions rather than his analysis. Ford has proposed alternate forms of analysis, but has not directly objected to the analysis Dr. Richardson actually performed. Plaintiff explains Dr. Richardson's analysis: Dr. Richardson argues that the design of the Bronco II causes oversteer when the rear roll stabilizer loads the outside rear tire causing it to slide out. This opinion, Plaintiff claims, is based on Dr. Richardson's experience with 100 previous Bronco rollover cases and the mechanical dynamics of the rear roll stabilizer as documented by Ford. Plaintiff also points to a decision by the Sixth Circuit upholding a trial court's decision to admit Dr. Richardson's testimony regarding the Ford Bronco II's oversteer alleged defect. *Clay v. Ford Motor Co.,* 215 F.3d 663 (6th Cir. 2000).

Ford also objects to Dr. Richardson's testimony that the handling defect caused the accident in this case and Dr. Richardson's testimony that the vehicle experienced two-wheel lift. Ford notes that Dr. Richardson has not done any physical testing, computer analysis, or quantitative investigation comparing the performance of a sport utility vehicle he considers non-defective. Plaintiff counters that it would be

unrealistic to attempt to duplicate the exact conditions of the accident and that Ford discontinued rollover testing due to an unacceptable risk to the test drivers. Dr. Richardson relies on a test conducted in 1989 in which a Ford Bronco II tipped up on the two driver side wheels during an obstacle avoidance maneuver at 37 miles per hour. Again, Plaintiff argues that Ford primarily objects to Dr. Richardson's conclusions rather than analyzing the methods Dr. Richardson uses.

B. Ruling

The Court hereby denies Defendant Ford's request to exclude Dr. Richardson's testimony. Ford's criticism of Dr. Richardson's testimony goes primarily to the weight of his testimony, which is an issue to be addressed at trial by the jury.

**ACCORDINGLY, IT IS ORDERED**:

1. Ford's Second Motion for Partial Summary Judgment **(Ct. Rec. 94)** is **STRICKEN WITHOUT PREJUDICE.**

2. Ford's Motion to Exclude Expert Testimony and Related Evidence Pursuant to FRE 403, FRE 702, FRE 703 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.* **(Ct. Rec. 116)** is **GRANTED IN PART** and **DENIED IN PART** as detailed below:

a. With respect to the testimony of Dr. Karnes regarding his proposed alternate warning, Ford's motion is **GRANTED.**

b. With respect to the testimony of Mr. Biss, Ford's motion is **GRANTED IN PART** (Mr. Biss will not be permitted to testify regarding his survey of 37 Ford Bronco II's or to Ford's duty to recall) and **DENIED IN PART** (Mr. Biss will be permitted to testify regarding a post manufacture warning, proposed alternate designs, and the useful safe life of the vehicle).

c. With respect to the testimony of Dr. Ward, Ford's motion is **GRANTED IN PART** (Dr. Ward will not be permitted to testify to her own ability to use the seatbelt, or that Plaintiff was unable to use the seatbelt on the day of the accident) and **DENIED IN PART** (Dr. Ward will be permitted to testify to the surrogate test she conducted and to the general difficulty in use of the seatbelt).

d. With respect to the testimony of Dr. Caldwell, Ford's motion is **DENIED.**

e. With respect to the testimony of Dr. Richardson, Ford's motion is **DENIED.**

**IT IS SO ORDERED**. The District Court Executive is directed to enter this Order and provide a copy to counsel.

**DATED** this 20th day of March 2007.

S/ Edward F. Shea
EDWARD F. SHEA
UNITED STATES DISTRICT JUDGE

Q:\Civil\2005\0253.MILs.wpd