UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CRYSTAL BEAR, by and through her Guardian Ad Litem, Gary N. Bloom,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FORD MOTOR COMPANY, a Delaware corporation; and MARLA BEAR MOTTESHARD, a single person,<br><br>　　　　　Defendants. | NO. CV-05-253-EFS<br><br>**ORDER ENTERING THE COURT'S ORAL RULINGS FROM HEARING ON MAY 22, 2008** |

　　A hearing was held in the above-captioned matter on May 22, 2008, in Spokane, Washington. Richard C. Eymann and Raymond F. Thomas appeared on behalf of Plaintiff Crystal Bear; Caryn G. Jorgensen and Donald H. Dawson[1] appeared on behalf of Defendant Ford Motor Company; and Patrick G. McMahon appeared on behalf of Defendant Marla Bear Motteshard. Barbara Van Dyke, a juror from the trial, appeared without counsel and testified. Before the Court were Defendant Ford's oral motion to strike

---

[1] Mr. Dawson appeared via video conference.

ORDER * 1

the Declaration of Richard M. Leland and Plaintiff's Motion for New Trial. (Ct. Rec. 501.) After reviewing the submitted material and relevant authority, listening to Ms. Van Dyke's testimony, and hearing oral argument, the Court is fully informed. The Court grants Defendant Ford's oral motion to strike and denies Plaintiff's new trial motion. This Order serves to memorialize and supplement the Court's oral rulings.

## I. Background

On February 19, 2008, a fifteen-day jury trial began in the above-captioned matter. (Ct. Rec. 387.) Before jury selection, the Clerk's Office mailed two questionnaires to all prospective jurors. The first questionnaire is the standard three-page Federal Juror Questionnaire ("FJQ"). FJQ questions twenty-four (24) and twenty-five (25) read as follows:

> 24. Other than divorce or child custody cases, have you or any member of your family ever filed a lawsuit?
>
> 25. Have you or any family member ever had a lawsuit filed against you?

The FJQ requires prospective jurors to swear or affirm that their answers are truthful. Ms. Van Dyke, a prospective juror who was eventually empaneled, answered "no" to both questions.

The second questionnaire was a unique twelve-page Supplemental Juror Questionnaire ("SJQ") created by the parties that addressed several topics including, *inter alia,* vehicle ownership. The SJQ did not contain any relevant questions relating to litigation history.

The Court distributed a third and more informal questionnaire during jury selection. This one-page questionnaire addressed topics ranging from favorite television programs to whether the prospective juror

ORDER * 2

recognized any other prospective juror. This informal questionnaire did not contain any relevant questions relating to litigation history.

On March 11, 2008, the jury returned a verdict for Plaintiff against Defendant Motteshard in the following amounts:

    Past Economic Damages:    $344,488.42

    Future Economic Damages: $5,555,511.58

    Non-economic Damages:     $115,200.00

(Ct. Rec. 470). The jury also determined that Defendant Ford was not liable for Plaintiff's injuries and damages. (Ct. Rec. 468.) On March 25, 2008, Plaintiff filed the new trial motion now before the Court. (Ct. Rec. 501.)

## II. Discussion

### A. Waiver of Right to Object

Defendant Ford argues that Plaintiff waived her right to object to Ms. Van Dyke as a juror because her alleged grounds for disqualification were easily discoverable and Plaintiff neglected to raise them until now. (Ct. Rec. 533 at 14.) Plaintiff counters that 1) she properly relied on Ms. Van Dyke's voir dire answers, 2) the case was demanding and should not require thorough independent investigation of each juror, and 3) Defendant Ford also had the onus to discover any juror irregularities. (Ct. Rec. 542 at 6.)

"A [juror] disqualification which by reasonable diligence could have been discovered before verdict, may not afterwards be made the subject of an attack upon a verdict." *Spivey v. United States,* 109 F.2d 181, 186 (5th Cir. 1940).

Here, the Court declines to find that Plaintiff waived her right to object to Ms. Van Dyke. His curiosity aroused by the jury verdict, Mr.

ORDER * 3

Eymann searched Washington Court's website for the seated jurors' litigation history – he did not locate any records for Ms. Van Dyke. Mr. Eymann then searched through Spokane County Superior Court's physical archives and located several tax warrants and a previous product liability suit.

In contrast, Linda McIntosh Wheeler, the legal assistant for Defendant Ford's defense counsel, located Ms. Van Dyke's litigation history on the Washington Courts' website in less than sixty (60) seconds. (Ct. Rec. 535.) Regardless, waiver did not occur. It is not counsels' duty to discover if a juror is telling the truth during *voir dire*; it is the juror's duty to tell the truth during *voir dire*. *Voir dire*, after all, is French for "to speak the truth." *See* BLACK'S LAW DICTIONARY 1569 (7th ed. 1999).

## B. New Trial Based on Juror Misconduct

### 1. Standard

A motion for a new trial based on juror dishonesty during voir dire requires a showing that 1) a juror failed to answer honestly a material question; and 2) a correct answer would have provided a valid basis for a challenge for cause. *Price v. Kramer*, 200 F.3d 1237, 1254 (9th Cir. 2000) (citing *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556 (1984)). "The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *McDonough*, 464 U.S. at 556. A district court's ruling on a motion for new trial under Federal Rule of Civil Procedure 59(a) is reviewed for an abuse of discretion. *Dorn v. Burlington N. Sante Fe R.R.*, 397 F.3d 1183, 1189 (9th Cir. 2005).

### 2. Failure to Honestly Answer a Material Question

Plaintiff argues that Ms. Van Dyke's FJQ and voir dire answers were dishonest because she failed disclose 1) her involvement in two lawsuits brought by the Washington Department of Revenue; and 2) her involvement as one of three plaintiffs in a product liability action brought by Mr. Eymann's former law firm. (Ct. Rec. 502 at 4.)[2] Defendant Ford responds that Plaintiff cannot demonstrate Ms. Van Dyke's FJQ and voir dire answers were dishonest and motivated by a lack of impartiality. (Ct. Rec. 533 at 4.)

As stated, *McDonough's* first requirement for a new trial is that a juror failed to honestly answer a material question. 464 U.S. at 556. There is no formula for identifying juror dishonesty. The Ninth Circuit has, however, provided guidance as to what does not constitute dishonesty. For example, forgetfulness and misunderstanding do not constitute dishonesty. *See Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998); *Price,* 200 F.3d at 1254-55. Importantly, the Ninth Circuit encourages tolerance when evaluating voir dire answers because "jurors may forget incidents long buried in their minds, misunderstand a question or bend the truth a bit to avoid embarrassment." *Dyer,* 151 F.3d at 973.

---

[2] Defendant Motteshard filed briefing asserting that Ms. Van Dyke's FJQ and voir dire answers were dishonest and that juror misconduct occurred. (Ct. Rec. 536.) Despite these assertions, Defendant Motteshard does not demand a new trial; rather, she will abide by the Court's decision. Because Defendant Motteshard takes no position on whether a new trial is warranted, the Court will focus on Plaintiff and Defendant Ford's arguments, citing to Defendant Motteshard as needed.

ORDER ~ 5

The underlying concern is whether the allegedly dishonest answer indicates a lack of impartiality. *Id.* (citations omitted).

With these principles in mind, the Court now addresses Ms. Van Dyke's allegedly dishonest FJQ and voir dire answers.

### i. Question No. 24 - Have You Ever Filed a Lawsuit?

Plaintiff insists that Ms. Van Dyke's failure to disclose her involvement in a previous product liability action brought by attorneys from Mr. Eymann's former law firm constitutes dishonesty. (Ct. Rec. 502 at 4.) Defendant Ford counters that Plaintiff cannot demonstrate that Ms. Van Dyke's answers were either dishonest or motivated by bias. (Ct. Rec. 533 at 6.)

In February 1994, a projection television owned by Ms. Van Dyke's tenants overheated, caught fire, and damaged both her rental unit and the tenants' personal property. Safeco Insurance, Ms. Van Dyke's insurer, examined the claim and made a $30,000.00 cash payout. In June 1995, Ms. Van Dyke, along with two other plaintiffs, initiated a product liability case against Philips Electronics, the projection television's manufacturer, alleging that the fire caused $53,250.00 in damages to Ms. Van Dyke's rental unit and the property therein. (Ct. Rec. 505-4 at 55.) Ms. Van Dyke was represented by Richard C. Feltman and Richard M. Leland, two attorneys from Mr. Eymann's former law firm, Feltman, Gebhardt, Eymann & Jones, P.S. The parties conducted discovery, which included an engineer's report, interrogatories, and depositions. Ms. Van Dyke was deposed in April 1996. The case was dismissed in September 1997 - Ms. Van Dyke received $1,000.00 in settlement proceeds.

Plaintiff argues that Ms. Van Dyke remembers the lawsuit, remembers her insignificant settlement, and remembers Mr. Eymann as an attorney

ORDER * 6

from the firm that poorly represented her interests. This, Plaintiff argues, creates bias.

Given Plaintiff's allegations, the Court determined an evidentiary hearing to inquire into juror bias was appropriate. *See Williams v. Taylor,* 529 U.S. 420 (2000) (finding evidentiary hearing to determine partiality required where a juror's response to *voir dire* query was not forthcoming and another was factually misleading); *see also Fields v. Woodford,* 309 F.3d 1095 (9th Cir. 2002) (finding an evidentiary hearing to assess credibility and determine partiality appropriate where juror provided a misleading response to *voir dire* query). The Court subpoenaed Ms. Van Dyke and questioned her in open court. When asked about the lawsuit, Ms. Van Dyke stated that she did not remember the case. The Court finds Ms. Van Dyke's testimony credible as to tone, manner, and substance and that her forgetfulness is supported by the following factual findings:

1) Timing. The lawsuit began thirteen (13) years ago and concluded eleven (11) years ago. This significant time passage lends credibility to Ms. Van Dyke's statement that she neither remembered the lawsuit nor the law firm that represented her interests;

2) Type of Damages. The 1995 lawsuit was for very modest property damage, not bodily injury;

3) Representation. Mr. Eymann did not represent Ms. Van Dyke; rather, she was represented by two of his former law partners. The only connection between Mr. Eymann and Ms. Van Dyke is that his name appeared in the former firm's letterhead - a feeble connection. The possibility that Ms. Van Dyke remembered or

ORDER ~ 7

        recognized Mr. Eymann as a member of his former law firm is even more remote considering she did not remember either the attorneys or the law firm that previously represented her interests; and

4) Interests. Ms. Van Dyke testified that the lawsuit was of little importance because Safeco Insurance Company previously paid out $30,000.00 to cover her rental unit's property damage - this covered her losses. The unit's renters, however, lacked insurance and were looking for avenues to cover their property losses. When asked why she appeared as a plaintiff in the lawsuit, Ms. Van Dyke was allegedly informed that, as the rental unit's owner, she needed to be a named plaintiff for the action to proceed.

These facts, taken together, demonstrate that Ms. Van Dyke's voir dire and FJQ answers were, as she stated, a product of forgetfulness and misunderstanding rather than dishonesty.

Plaintiff emphasizes that the Court's repeated admonitions to prospective jurors about the importance of full disclosure makes her forgetfulness inconceivable. For support, Plaintiff submitted the Declaration of Richard M. Leland. (Ct. Rec. 543.) Mr. Leland was Mr. Eymann's former law partner and represented Ms. Van Dyke in the 1995 product liability action. Mr. Leland states, *inter alia,* that Ms. Van Dyke actively participated in the previous litigation from the outset, sought compensation beyond her insurance payout, and expressed disappointment in the results. *Id.* at 5.

Mr. Leland's statements, and Mr. Eymann's use of Mr. Leland's statements and the former firm's time sheets labeled in the names of the

ORDER * 8

other two plaintiffs, are troubling considering Washington Rules of Professional Conduct ("RPC") 1.6 and 1.9, which state, in pertinent part:

> 1.6 - Confidentiality of Information
>
> (a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b);
>
> . . . .
>
> 1.9 - Duties to Former Clients
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter . . . reveal information relating to the representation except as these Rules would permit or require with respect to a client.

WASH. RULES OF PROF'L. CONDUCT R. 1.6(a) and 1.9(c) (2008). Neither Mr. Eymann nor Mr. Leland obtained informed consent from their former client, Ms. Van Dyke, to disclose the confidences set forth in Mr. Leland's declaration. Nor did they obtain the informed consent from the other two plaintiffs, also former clients, to use the time sheets. At the hearing, Plaintiff argued RPC 1.6(b)(3) and (b)(7) justified introducing Mr. Leland's disclosure, either by themselves, or as an exception to RPC 1.9. RPC 1.6(b)(3) and (b)(7) state:

> (b) A lawyer to the extent the lawyer reasonably believes necessary:
>
> > (3) may reveal information relating to the representation of a client to prevent, mitigate, or rectify substantial injury to the financial interests or property of another that is reasonably certain to result or has resulted from the client's commission of a crime or fraud in furtherance of which the client has used the lawyer's services;
> >
> > . . . .

ORDER * 9

> (7) may reveal information relating to the representation of a client to inform a tribunal about any client's breach of fiduciary responsibility when the client is serving as a court-appointed fiduciary such as a guardian, personal representative, or receiver.

RPC 1.6(b). With respect to RPC 1.6(b)(7), Plaintiff did not cite, and the Court cannot find, any authority that identifies prospective jurors as "court-appointed fiduciaries" within the meaning of RPC 1.6(b)(7). Accordingly, RPC 1.6(b)(7) was not a permissible basis for Mr. Leland to disclose Ms. Van Dyke's attorney-client confidences.

With respect to RPC 1.6(b)(3), Plaintiff emphasized that disclosure was appropriate in order to prevent financial injury to her interests due to fraud. Again, Plaintiff did not cite, and the Court cannot find, any authority that RPC 1.6(b)(3)'s "crime-fraud" exception applies to these facts. The attorney-client privilege is one of the oldest recognized privileges for confidential communications. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege is intended to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Id.* While the Court recognizes that confidentiality is not absolute (Rule 1.6 contains many exceptions), the exceptions are just that - exceptions. The standard is that lawyers shall not reveal information relating to client representation because confidentiality is essential to a proper working adversarial justice system.

The Court finds RPC 1.6's exceptions did not permit disclosure of attorney-client confidences and that the proper remedy is to strike the

Declaration of Richard M. Leland and its attached time record exhibits. (Ct. Rec. 543.) Defendant Ford's oral motion to strike is granted.

Setting aside Mr. Leland's declaration, the Court finds Ms. Van Dyke's forgetfulness is credible. In Ms. Van Dyke's mind, the previous product liability action was forgettable. She did not file the products liability suit against Philips Electronics; rather, her tenants did, and she remembers becoming involved after being informed that her tenants would not otherwise be able to recover for their personal property losses. Ms. Van Dyke's insurance payout, and Safeco's statements that she would be compensated for any repairs that exceeded the $30,000.00 payout, lend merit to her testimony that her own losses were covered and that she had little or no investment in the product liability action. (Ct. Rec. 534, Ex. C at 17.) Accordingly, Plaintiff cannot satisfy *McDonough's* first requirement because the Court finds that Ms. Van Dyke's failure to disclose her involvement in prior litigation was the product of forgetfulness and misunderstanding, not dishonesty. *See McDonough,* 464 U.S. at 556. The Court would make the same findings even with Mr. Leland's declaration and its attached time record exhibits.

### ii. Question No. 25 - Ever Had a Lawsuit Filed Against You?

Plaintiff argues that Ms. Van Dyke improperly withheld that she was a defendant in two lawsuits brought by the Washington Department of Revenue. (Ct. Rec. 502 at 4.) Defendant Ford responds that tax warrants are not lawsuits and that Ms. Van Dyke correctly did not list the warrants when answering Question No. 25. (Ct. Rec. 533 at 3.)

Revised Code of Washington 82.32.210 authorizes the Department of Revenue ("DOR") to issue warrants for overdue fees, taxes, increases, and penalties. RCW 82.32.210 (2008). The warrant, when filed with the

ORDER * 11

superior court clerk, becomes "a lien upon the title to and interest in all other real and personal property of the taxpayer against whom it is issued the same as a judgment in a civil case duly docketed in the office of the clerk." *Id.* This tax liability and collection procedure does not follow conventional judicial procedure, including the right to a jury trial. *See Peters v. Sjoholm*, 25 Wn. App. 39, 44 (1979).

Here, Ms. Van Dyke properly did not list the tax warrants when answering Question No. 25. Tax warrants are not lawsuits and there is no dishonesty in failing to disclose their existence. The tax warrants in question were filed in Spokane County Superior Court and provided identifying cause numbers and names - nothing more. RCW 82.32.210's tax collection procedure does not involve a summons, a complaint, an answer, or any other pleadings usually associated with the conventional judicial process. Tax warrants are simply a means for the Department of Revenue to record liens against defaulting taxpayers. Accordingly, Ms. Van Dyke honestly answered Question No. 25.[3] Moreover, Plaintiff's exhibit introduced at the hearing showing other tax warrants does not impeach Ms. Van Dyke's credibility. She candidly admitted the facts of her situation leading to these tax warrants and her explanation was inclusive.

### 3. Juror's Truthful Answer Creates a Valid Challenge for Cause

Plaintiff contends there is little doubt that Ms. Van Dyke would have been excused for cause if she had disclosed her previous litigation experience. (Ct. Rec. 502 at 6.) Defendant Ford answers that there is

---

[3]Plaintiff's reply brief did not respond to Defendant Ford's position that the tax warrants do not qualify as law suits.

ORDER * 12

no evidence that Ms. Van Dyke's previous litigation experience makes her biased against Plaintiff. (Ct. Rec. 533 at 11.)

*McDonough's* second requirement for a new trial is that the juror's truthful answer would have provided a valid basis for a challenge for cause. 464 U.S. at 556. Juror challenges in civil cases are governed by 28 U.S.C. § 1870. Section 1870 leaves the ultimate decision on challenges for cause, as well as the process, to the district court's discretion. 28 U.S.C. § 1870 (2008); *Nathan v. Boeing Co.*, 116 F.3d 422, 424 (9th Cir. 1997).

Challenges for cause must be based on a narrowly specified, provable, and legally cognizable basis of partiality. *Darbin v. Nourse*, 664 F.2d 1109, 1113 (9th Cir. 1981). Moreover, there must be a showing of actual bias, which involves "an inability to act impartially or a refusal to weigh the evidence properly." *Image Tech. Servs. v. Eastman Kodak Co.*, 125 F.3d 1195, 1220 (9th Cir. 1997).

Here, there is no evidence that Ms. Van Dyke's previous litigation experience creates a valid basis for a challenge for cause. This is true even if the Court accepted Mr. Leland's statements about Ms. Van Dyke's involvement in the previous product liability action. The reason is simple - nothing about Ms. Van Dyke's previous litigation experience demonstrates bias against Plaintiff or Mr. Eymann.[4]

---

[4]The verdict supports this conclusion. The jury returned a multi-million dollar verdict in Plaintiff's favor against Defendant Motteshard. While this verdict may not be practically recoverable, there is nothing to suggest that the jury knew this; further, it diminishes the possibility of bias by showing that the jury (including Ms. Van Dyke) had

ORDER * 13

Even if Ms. Van Dyke was disappointed with her results in the previous product liability action, her disappointment lies with Mr. Leland, not Mr. Eymann. And as discussed, there is no evidence in the record that she connected Mr. Eymann with Mr. Leland.

Plaintiff and Defendant Motteshard insist that, because the Court excused Juror No. 36 for cause for merely contacting Plaintiff's counsel's firm about representing her recently injured husband, there is no question that the Court would have excused Ms. Van Dyke for cause. (Ct. Recs. 502 at 4; 536 at 9.) Not so. Juror No. 36 was excused for cause because:

1)  she conducted independent research on the Bronco II's high center of gravity after filling out the FJQ;
2)  her brother was involved in an automobile rollover involving the Bronco II;[5] and
3)  she was openly biased against Defendant Ford for designing an unsafe vehicle that injured her brother.

Juror No. 36's contact with Mr. Eymann's law firm played little role in the Court's decision. In fact, the Court explicitly asked Juror No. 36 if she remembered the lawyers she contacted regarding her husband's

---

no problem fashioning a multi-million dollar verdict for Plaintiff.

[5] Juror No. 36's brother's involvement in a Bronco II rollover is also grounds for exclusion under presumed or implied bias. *See Coughlin v. Tailhook Ass'n,* 112 F.3d 1052, 1062 (9th Cir. 1997) (finding implied bias may exist where a juror or her close relative was personally involved in a situation involving a similar fact pattern).

ORDER * 14

injuries - her answer, tellingly, was that the accident happened almost ten years ago and that "[she] had no idea." (Ct. Rec. 534, Ex. D at 45.)

Every case involving a new trial based on juror dishonesty during voir dire shares a common thread - a partial juror. *See McDonough*, 464 U.S. at 556 (finding that "only reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial"); *Dyer*, 151 F.3d at 973 ("even an intentionally dishonest answer by a juror is not fatal, so long as the falsehood does not bespeak a lack of impartiality.")

Here, Plaintiff cannot demonstrate that Ms. Van Dyke's forgetful and mistaken FJQ and voir dire answers affected her ability to be impartial. Trials are costly. "To invalidate a 3-week trial because of a juror's mistaken, though honest, response to a question is to insist on something closer to perfection than our judicial system can be expected to give." *McDonough*, 464 U.S. at 555. Litigants are entitled to fair trials, but not perfect ones, for there are no perfect trials. *Id.* at 553 (citations omitted). While it is regrettable that Ms. Van Dyke's answers made this hearing necessary, there is no demonstrated bias and a new trial is neither required nor appropriate.

**C. Implied Bias**

Plaintiff suggests in her reply brief that implied bias may also be grounds for a new trial.[6] (Ct. Rec. 542 at 8.) Implied bias can serve as a basis for a new trial only in "extraordinary" or "extreme" circumstances. *See Smith v. Phillips*, 455 U.S. 209, 222 (1982). The

---

[6]Plaintiff also raised this issue at the new trial hearing.

ORDER * 15

Ninth Circuit has recognized four (4) factual scenarios where implied bias may exist:

1) where the juror is apprised of such prejudicial information about the defendant that the court deems it highly unlikely that he can exercise independent judgment even if the juror states he will;

2) the existence of certain relationships between the juror and the defendant;

3) where a juror or his close relatives have been personally involved in a situation involving a similar fact pattern; and

4) where it is revealed that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the trial participants, or that the juror was a witness or somehow involved in the underlying transaction.

*Tinsley v. Borg*, 895 F.2d 520, 528 (9th Cir. 1990) (internal quotations omitted). The Court need not consider implied bias because none of the four (4) factual scenarios apply and Plaintiff raised this argument for the first time in her reply. *See United States v. Romm,* 455 F.3d 990, 997 (9th Cir. 2006) (finding arguments not raised by a party in its opening brief are deemed waived); *Bazuaye v. INS,* 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived.")

**D. New Trial Based on Inadequacy of Damages**

Plaintiff also seeks a new trial because the jury's damages award was inadequate. (Ct. Rec. 502 at 6.) Defendant Ford responds that there is no basis for overturning the jury's verdict because the damages award does not go against the great weight of the evidence.

ORDER * 16

(Ct. Rec. 533 at 16.)  Defendant Motteshard orally agreed at the hearing that the verdict was not the result of passion or prejudice and that a new trial on these grounds was not warranted.

"The trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000).  A new trial is also appropriate if passion and prejudice tainted the jury's verdict. *Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 905 (9th Cir. 2000).

**1. Jury's Liability Finding**

Plaintiff insists that the jury's inadequate damages award also justifies a new trial on liability because the "apparent cold-heartedness of the jury verdict brings into question whether the entire verdict . . . was fatally tainted . . . ."  (Ct. Rec. 502 at 8.) Defendant Ford counters that Plaintiff cannot demonstrate that the jury's allegedly improper damages award affects its liability finding. (Ct. Rec. 533 at 17.)

The Ninth Circuit has routinely held that, if a court finds a jury's damages amount is based on passion and prejudice, a new trial on liability is not appropriate unless that finding was also based on passion and prejudice. *Pershing Park*, 219 F.3d at 905.

Here, Plaintiff's cursory allegation that the jury was insensitive, without more, is insufficient to grant a new trial on liability. Defendant Ford presented extensive expert testimony from, among others, Lee Carr and Kenneth Snodgrass, that the Bronco II was reasonably safe as designed with respect to its stability and handling and rear seat

ORDER \* 17

restraint systems. Apparently the jury accepted this evidence, which unquestionably supports its finding on Defendant Ford's non-liability. Additionally, the jury determined that Defendant Motteshard's negligence was the sole proximate cause of Plaintiff's injuries, an appropriate finding considering Defendant Motteshard admitted she negligently drove the Bronco II. A jury allegedly motivated by passion and prejudice would not award a multi-million dollar verdict for Plaintiff against Defendant Motteshard. No inference of passion or prejudice can be drawn from this verdict.

### 2. Jury's Damages Finding

A plaintiff's path towards a new trial based on inadequate damages is feasible, but formidable. *See Mekdeci v. Merrell Nat'l Labs.*, 711 F.2d 1510, 1513 (11th Cir. 1983); *Wagenmann v. Adams*, 829 F.2d 196, 215 (1st Cir. 1987). This is because "[t]ranslating legal damage into money damages is a matter peculiarly within a jury's ken, especially in cases involving intangible, non-economic losses. *Smith v. Kmart Corp.*, 177 F.3d 19, 30 (1st Cir. 1999) (internal citations omitted).[7]

Here, the jury awarded Plaintiff $6,015,200.00 in damages for her injuries. Plaintiff emphasizes that the jury's non-economic damage award is inconceivable considering her non-economic damages evidence was largely unrefuted. Defendant Ford suggests that the smaller non-economic damages figure may be explained by, *inter alia*, the overwhelming evidence

---

[7]This Court has awarded other clients of Mr. Eymann a new trial on non-economic damages based on findings of passion or prejudice. *See Rebman v. Kadlec Medical Center,* CV-O4-5064-EFS. That case settled before the new trial.

ORDER * 18

of Plaintiff's tremendous recovery and positive attitude. It is not clear whether Plaintiff's considerable recovery and positive courtroom demeanor impacted the jury to Plaintiff's disadvantage. What is clear is that the jury returned a large award for future economic damages ($5,555,511.58), the stipulated amount for past economic damages ($344,488.42), and a smaller figure for non-economic damages ($115,200.00). Mixed verdicts suggest that the jury rationally evaluated the evidence during deliberations. *See United States v. Aramony*, 88 F.3d 1369, 1378-79 (4th Cir. 1996).

It is also important to remember the subtle undercurrents present throughout this trial. From the outset, it was apparent that the parties were between Scylla and Charybdis.[8] Plaintiff was required to name her sister as a defendant even though the case was designed and tried to obtain a verdict against Defendant Ford. Defendant Ford avoided explicit condemnation of Defendant Motteshard lest it alienate the jury, with Defendant Ford's counsel even going as far in final argument to ask the jury not to punish Defendant Motteshard, even if it is at the expense of Defendant Ford.

In fact, at several points throughout the trial, including closing argument, the sisters sat beside each other in the gallery, occasionally holding hands. The jury was acutely aware of the delicate situation and responded with a verdict that adequately compensated Plaintiff for her economic damages considering Defendant Motteshard's admitted negligence, but modestly compensated Plaintiff with a non-economic damage award that

---

[8] Wikipedia, http://en.wikipedia.org/Scylla_and_Charybdis (last visited May 27, 2008).

ORDER * 19

Case 2:05-cv-00253-EFS   Document 554   Filed 05/28/08

would not burden Defendant Motteshard with overwhelming psychological guilt for Plaintiff's plight. In sum, the jury did precisely what counsel asked of them concerning preserving the sisters' already fragile bond.

The jury's damages award was neither against the great weight of the evidence nor motivated by passion or prejudice. Instead, the jury's damages award is within the "universe of possible awards that are supported by the evidence in this case." *Clark v. Taylor*, 710 F.2d 4, 14 (1st Cir. 1983).

Accordingly, **IT IS HEREBY ORDERED**:

1. For the reasons articulated on the record and in this Order, Defendant Ford's oral motion to strike the Declaration of Richard M. Leland **(Ct. Rec. 543)** is **GRANTED**.

2. For the reasons articulated on the record and in this Order, Plaintiff's Motion for New Trial **(Ct. Rec. 501)** is **DENIED**.

**IT IS SO ORDERED**. The District Court Executive is directed to enter this Order and distribute copies to counsel.

**DATED** this ___28th___ day of May 2008.

　　　　　　　　　　　　　　　　S/ Edward F. Shea
　　　　　　　　　　　　　　　　　EDWARD F. SHEA
　　　　　　　　　　　　　　United States District Judge

Q:\Civil\2005\253.NewTrial.Deny.wpd

ORDER * 20